Good morning. May it please the court, I'm Daniel Kaplan. I represent the appellant, Jorge Breton-Rodriguez. I'd like to quickly apologize to the court. It was stupid of me to step out and apologize to Mr. Ferg for stepping out at the wrong moment there. The question presented in this appeal is this. Can the government extract an incriminating statement from a man when he's barely recovered from a four-day-long coma, hooked up to a morphine drip, unable, lacking the cognitive ability to knowingly and intelligently waive his constitutional rights, and then use that incriminating statement, illegally obtained, against that person at his criminal trial? The answer to the question is no, and it's governed and controlled by the Supreme Court's decision in James v. Illinois. Let's assume that you're right about James, and that if the judge is suggesting or tentative ruling that he would let the sentence, the statement be used to impeach the expert. Let's assume you're correct about that. But the defense counsel used it first. What do you do about Oler? Your Honor, the government, of course, has argued that under Oler it's a waiver. It's not a waiver, and here's why. As you pointed out, I want to respond to one thing you said. You said tentative ruling. I believe eventually there were tentative rulings along the way. There were lengthy discussions about this. Eventually, before anyone brought it in, the Court made a very definitive final ruling and said to the defense counsel, you have a standing and continuing objection. It was in the wake of that definitive ruling by the district court that the defense counsel brought it in, as the prosecutor acknowledged, to pull the sting, essentially, because he knew the government was going to bring it in anyway. And it was also quite clear from those lengthy discussions that the prosecutor, Mr. Boswick, had every intention, as long as that expert testified and gave any meaningful testimony about the sole defense, which was insanity, to bring in that statement cross-examining the expert. Now, under those circumstances, this Court has held, in the case that we cited in a response 28J letter recently filed, called Sheehy v. South Pacific Transportation, that's 631 F. 2nd, 649, that the evidence coming in is not coming in because of the defense or the party that's complaining about it pulling the sting. It's coming in under those circumstances, very similar circumstances in that case to this case, where the Court's made a definitive ruling that it can come in because of the Court's ruling. Now, you referred to the older case. The older case is dealing with the Federal Rule of Evidence 609 issue of prior felonies and whether they can be used to impeach the defendant when the defendant testifies. And in that specific context, there are, indeed, several cases leading up to Oler, which the government has cited, Ninth Circuit cases, saying pulling the sting is a legitimate tactic but also constitutes a waiver. There are good reasons. I can identify three compelling reasons to distinguish the Rule 609 context and the waiver rule there from the more general waiver rule or waiver approach that's represented in cases like Sheehy v. South Pacific and the two other cases that we have in our reply brief in this case. The first reason is that the Oler line of cases rests centrally on a Supreme Court case called Luce v. United States. Luce, in turn, the rationale that's picked up in those Rule 609 cases is there's a context dependency to the waiver issue in the question of Rule 609. What I mean by that is you never really know until the moment where that statement is going to be used whether the judge is going to finally allow it to come in, to allow the prior felony to come in or not, because it's going to depend on exactly what the testimony has been right up to that very moment. It depends on the context. So you really can't say this is going to come in or not. The rule is dependent on a specific context. Here, on the other hand, there is a categorical rule stated in James v. Illinois that the impeachment exception to the exclusionary rule doesn't apply to any other defense witness except the defendant himself. That rule is not dependent on context. You do know in this context. You do know in this trial, and you do know in this general non-Rule 609 context, that a categorical rule like that is not going to be dependent on the specific nature of the testimony. That's one sound reason to distinguish this context from the waiver rule that's applied in the 609 cases that the government has cited.  Some people think that it applies to some witnesses, not to others, that all that James said was it doesn't apply to all witnesses, and you don't know to which ones it does apply. So categorical is a little, maybe, let's say, overstated. Well, I believe the categorical interpretation is the correct interpretation of James. I do believe that there are much more Federal authorities that read the James case that way. There's a lot of leading treatises we cited that read the James case that way. And if you look at the plain language of James, on page 313 of the James decision, the Supreme Court refers to the, quote, class of impeachable witnesses, close quote, and then in the same sentence identifies that class as, quote, defendant alone, close quote.  The Supreme Court has given exception to the exclusionary rule as, quote, limited to the testimony of defendants, close quote. So there are categorical statements in James. It has been widely understood, although I grant you not universally understood, but widely understood as creating that categorical rule. And a point to make is that the Supreme Court, the reasoning in James, was clearly looking at the categorical situation. It identified it as systemic concerns. The Court specifically said towards the end of the decision, if you look at case-by-case applications of the exclusionary rule, you would never apply the exclusionary rule because in each individual case it looks like the truth-seeking function is much more important, it should come in, why worry about broader effects and systemic effects. They flatly rejected that approach and said we must essentially be categorical in setting rules in this exclusionary rule context because we are maintaining a systemic balance and it's partly resting on the need for a broad rule that will deter government misconduct. The use of the statement here, if you could explain it in context, it appeared to be very brief and just kind of dropped in in the middle of a lot of other things that were more important. So I'm just wondering what you, assuming you're right on everything else, how do we get past harmless error? Your Honor, this was the only evidence of any kind in this entire trial that gave the jury any foothold to draw a conclusion that Mr. Bretton Rodriguez had an intent to kill Agent Garcia. The only, and the government has not suggested there was any other such evidence except the other. Kagan. It's the only direct evidence. Well, there, the only, I think the only other reference that the government has made is that there was testimony about the way Mr. Bretton Rodriguez was grabbing and holding the gun. The problem with that is this Court has observed several times including a case called U.S. v. Vasquez-Chan, which Judge Reinhard authored. It's 978 F. 2nd 546, that where the evidence would support reasonable inferences in two different directions, one of which would lead to a not-guilty verdict, and the other of which would lead to a guilty verdict, the evidence to support a guilty verdict must give the jury some basis for choosing the guilty version over the innocent version beyond a reasonable doubt. Now, in this case, the jury had Mr. Bretton Rodriguez's own statements to doctors and psychiatrists was consistent except for this one statement that was taken from him while he was getting a morphine drip, just awakened from a four-day coma, just had a breathing apparatus removed from his throat, et cetera, et cetera. Every other statement he made said, I was trying to kill myself, I was overcome with grief about my niece and what had happened to her with the coyotes that were bringing us across. The jury would have had no basis for rejecting that innocent interpretation and choosing the guilty interpretation which supported the lesser-included verdict on attempted voluntary manslaughter but for that statement coming in. And the way it came in, first it came in on the direct testimony of Dr. Moran's. He described asking the defendant about Mr. Bretton Rodriguez about the FBI, having said he made that statement. And then, of course, as promised, the prosecutor came in for cross-examination and rehashed the same issue again. So it did receive a fair amount of attention, and it was not something that I believe the jury would have thought it was trivial in light of the full scope of the evidence in this case. Did the prosecutor mention it in closing? He did not, and in fact, the reason he did not was the judge had told him not to. After having made his ruling and let it in and having come in, during a break between sessions with the jury there, the judge said, we're not going to have any more about that. The prosecutor argued, actually, said, I want to talk about it, and the judge says, no, you're not going to, so he didn't. So the answer, I think, to your question, Your Honor, is it can't be harmless when it's really the sole evidence of an element of a crime on which he was found guilty, the most serious crime on which he was found guilty, which was the attempted voluntary manslaughter. Now, if it were assumed that I'm not right about how categorical James is, it would be appropriate to look to how the analysis of James should apply here, assuming you can apply it on a more ad hoc basis. Well, the analysis in James is looking at these categorical values, the truth-seeking function on the one hand, the need to deter governmental misconduct on the other hand, and the government is essentially asking this Court to take those factors and use them to fashion a brand-new exception, a relatively brand-new exception the D.C. Court of Appeals in a split decision has adopted, but for this Court, a brand-new exception to the exclusionary rule that would apply in insanity defense cases. That could make sense if the insanity defense cases presented a circumstance where those rationales seemed less forceful than they do in the general context. Actually, they seem more forceful. The Supreme Court talked about the problem of chilling defendants from presenting probative evidence. Well, this would chill defendants from presenting what is their single most crucial piece of evidence, which is the expert who says that they were insane. It's a particular concern in insanity defenses. And as far as the value to the government of chilling the defense, the value for the defense is exponentially increased to the government here because they know when they get illegally obtained evidence, they can use it to stop people like Mr. Bretton Rodriguez from presenting their entire defense. They will have no leg to stand on in terms of defending themselves, despite what may be a very valid case of an insanity defense. If there are no questions right now, I'd like to reserve the balance of my time. Kagan. May it please the Court. My name is Bruce Ferg, Assistant United States Attorney on behalf of the government in this case. We're not here to retry the Miranda issue. This Court decided it in the initial appeal and said the Miranda was not complied with, but the statement was voluntary. And that was the basis on which it was allowed to come in for impeachment purposes. But you don't even have to get into the details, because, in fact, this is a valid waiver situation. Both in his opening brief and in his reply brief, the defendants made it very clear that this was a predetermined tactical decision. He said, I beat the government to the punch by bringing this in. Now, that's exactly what Oler and this Court's cases say amounts to the waiver, because the defendant is making the decision at that point that he would rather go for the knockout, go for the hoped-for acquittal, rather than, with his presumed illegally admitted evidence, waiting to see if, in fact, the government actually does admit it, and then to present the issue on appeal. So he's not allowed to have it both ways. He has to make a tough tactical decision. He did, and he did not get the acquittal that he desired. But because he put the evidence in, he is not allowed to complain about it. Now, Oler is not just a 609 case. It arose in that context. But the very beginning of the Supreme Court's discussion says, this is a general rule of evidence, and it cites broadly to various treatises. And that's what my 28-J letter was about, that it's used in all kinds of contexts, even in civil contexts. So the bottom line is, if you think tactically it is to your benefit to present evidence that you might otherwise be able to complain about on appeal, then you've had your chance, that's your choice, and it's waived. So we think that the need to be able to complain about it is not a problem. Kennedy. Have we applied Oler beyond the prior offense circumstance? You have, in unpublished opinions. That doesn't count. Well, after 2007, at least for the value that they have of showing what the Court's thinking about, obviously not as precedent. And that's why I gave you the Beeville case, which is even a civil case. So it's clear that this concept that if you object to the evidence, then you've got to stand on that objection and not try and pull the sting. The old Sheehy case long precedes Oler and, in fact, had not been observed by this case even before then. Oler was this Court's case in which the Supreme Court actually affirmed. And so the old Sheehy approach that somehow you can have your cake and eat it, too, you can object, and then if you lose on your legal objection, go ahead and introduce the evidence, simply has not been law in this circuit for however it is, how long it's been since Sheehy. So basically, we have a waiver situation. But I would suggest to the Court that even if we did not, what James did was much more limited than has been read by defense in this case. Basically, the Illinois Supreme Court in James was itself creating, in effect, a categorical rule that you can use a voluntary but Miranda-violated statement to impeach anybody, anytime, any defense witness. And the Supreme Court said, no, you can't do that. But six times, no less, in the opinion, it talks about this all-encompassing Illinois rule. It didn't say there are never any circumstances under which it can be used. And that is especially clear from the whole line of cases that we now have, specifically about mental case defenses, beginning with Estell v. Smith, Buchanan v. Kentucky, this Court's own cases, including Pawlik, which says, when you put your state of mind in issue, which is what happened here, and particularly if you're doing it through an expert, and that is such a unique category of evidence that the government is entitled to bring in your contrary statements. For example, in Pawlik, it was a different psychiatrist who, not surprisingly, defense chose not to bring because he wasn't going to be helpful, who had other insights, and said, that is a unique category of evidence in which it's only fair for the jury to hear this kind of stuff. And that's why, even if you apply James appropriately, he comes in, because the considerations in James don't apply here. We are not talking about an off-the-street guy who is attesting to his own perceptions of the defendant, as in James, who is being contradicted, and is therefore subject to a perjury prosecution. We have an expert who is simply parroting what the defendant told him. He's not subject to perjury, nor is the defendant. And likewise, the defendant is in a position to control that. He knows when he goes to Dr. Moran's, I'm presenting an insanity defense. So what do I tell this doctor? Well, he claims that he doesn't even know anything about, or does not recall the statement that he made to the FBI, but it certainly is inconsistent. So how is a jury appropriately to weigh and analyze that? There were also issues that were raised about the forfeiture and sentencing, and I'll address those if the Court wants. Ginsburg. Are there any further questions? Thank you. Thank you, Your Honor. Did you say in your at the beginning of your argument that we had distinguished Oler? No. I'm sorry if I suggested that. I think I said that the Oler and the Ninth Circuit cases that led up to Oler, including the Ninth Circuit's case that was granted cert in Oler, all dealt with the rule evidence 609 prior felony. But have we said since Oler that it limited it to 609 cases or any types of cases? No. So you would like us to adopt that rule, that Oler is restricted to 609 cases? Well, I wouldn't necessarily say it's restricted to 609. Well, let me answer it this way. The Supreme Court holding in the Oler case reads like this. We conclude that a defendant who preemptively introduces evidence of a prior conviction on direct examination may not appeal – may not on appeal claim that the admission of such evidence was error. The holding of the Supreme Court's Oler case was, in fact, limited to the rule 609. That is literally true. The question is, does this rule about pulling the sting in waiver that's articulated in Oler apply beyond the rule 609 context? And the answer to that question is I do not know of a case that says it doesn't. I believe it shouldn't apply here, even if perhaps there are other contexts where it could apply. But you don't know of any court that has drawn that distinction? I don't know of a court that has drawn that distinction. I think, though, that if the reasoning about waiver in the Oler case does have a broader application outside of rule 609, that broader application shouldn't extend to this context. I mentioned the issue of context dependency. That would be one reason to say it is indeed limited to the rule 609 context, because that is a specific rule. There may be other circumstances that have a similar context dependency. This is certainly not one of them. This is a categorical rule. You don't have to wait until that moment to see if the ruling is going to be let in or keep it out. Another point to make is that there's a fairness issue, because this is a situation where an individual had his rights violated. There's – as the government concedes, there's no dispute about that now. That's law of the case. A statement, an incriminating statement is extracted from him illegally, and then the question simply becomes, if that's going to come in despite it having been a product of a violation of his constitutional rights, does he at least have the ability to be the first one to bring it to the jury's attention? At the very least, can he do that? And applying the Oler rule, which deals with somebody's actual prior felony convictions, their own prior misconduct, and saying we should willy-nilly apply the same waiver rule in the context where it's the government's misconduct that really underlies the existence of that evidence, and say even then, the defendant doesn't have the ability to even be the first to draw the sting from it, that's quite a different thing in terms of the fairness to the defendant. The final thing is, in terms of applying the government-suggested extension of the Oler rule to this context, and looking at this individual case, is that this record is very clear. There are long discussions in this excerpt of record. The prosecutor said over and over again, I am going to use this. If that expert gets up, I am going to ask him about it, and I'm going to say, what does this have to do with your conclusions, and I'm going to make sure the jury hears it. And the judge made his ruling very clear. This record leaves no doubt that it was coming in. Thank you. Thank you. The case just argued is submitted for decision. And that concludes the Court's calendar for this morning. The Court stands adjourned.
judges: Schroeder, Reinhardt, Hawkins